## Calumet Electric St. Ry. Co. v. Charles Grosse.

1.  ELECTRIC WIRES—*Duty in Locating.*—Where an electric wire is located upon an overhead structure and removed by several feet from all possibility of injuring any person who, in the exercise of his usual rights and duties upon a highway, may be in its vicinity, the proprietors of such wire are under no duty to protect it by an absolutely perfect insulation, so that no person, however extraordinary may be the rightful duties he is engaged in, will be injured through contact with it.

**Trespass on the Case,** for injuries from an electric wire.  Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding.  Heard in this court at the March term, 1897.  Reversed and remanded.  Opinion filed June 14, 1897.

JUDSON F. GOING and LOUIS G. KNIGHT, attorneys for appellant.

CLARK & CLARK, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellee was a lineman engaged in stringing telephone wires for the Chicago Telephone Company upon its poles on Cottage Grove avenue, standing at or about the curb line, on the east side of said avenue.

The appellant operated its electric car line upon and in about the center of the same avenue. Its trolley wires were fed by span wires from insulated feed wires carried upon poles standing between the telephone poles and the east sidewalk. The two lines of poles were on substantially parallel lines, about fifteen feet apart. Both lines of poles were on the east side of the avenue, and the telephone poles stood not far from midway between the feed wire poles and the trolley wires, and were from five to ten feet higher than the feed wire poles. The arms of the telephone poles being higher than the span wires, it was necessary, in order to string the telephone wires taut, to get them across and above the span wires that reached across the street, from the feed to the trolley wires, between the successive telephone poles.

As we understand the method of doing the work, it was for appellee, acting as lineman, to proceed ahead and, taking hold of the telephone wire that reached from the last preceding telephone pole, across the feed wires to the coil of wire on the ground, to flop or swing it over the intervening feed wire pole, after which it would be taken by a man upon the next telephone pole and fastened, and so on to the next pole.

To an inexperienced person such a method speaks poorly for the ingenuity of those who employed it, but there is testimony that it was the only method then used in Chicago under like conditions.

The method pursued, whether precisely stated by us or not, was followed in the instance under consideration for the distance of about a mile and a half in safety, but then the telephone wire in some way came into contact with an uninsulated space in the feed wire, or at the point of connection between the feed wire and one of the span wires, and appellee received the shock and burns for which he was awarded the damages of $1,000 in question.

The right to any recovery against the appellant in favor of the appellee, under all the circumstances of the accident, which we have stated only in most general respects, is at least doubtful.

Calumet Electric St. Ry. Co. v. Grosse.

Perhaps the most serious question in the case is that of the duty of the appellant to the appellee. The appellee was not in the employ of the appellant, or of any person under the appellant. There does not appear to have been any contractual relation between the telephone company, for which appellee was at work, and the appellant, providing in any way for the use of the feed wire by the telephone company. And in this connection, quite a serious question arises, whether without proof of authority to do so, the telephone company or its employes had the right, without being treated as trespassers, to drag their wires upon and across those of appellant in the manner pursued in this case, even though both companies were in rightful occupancy of the public street. But we need not press that inquiry at this time.

The wire from which the shock was received was upon an overhead structure, and removed by several feet from all possibility of injuring anybody, who might, in the exercise of his usual rights and duties upon a highway, be in its vicinity. The wire being so located, was the appellant under a duty to protect it by an absolutely perfect insulation, so that no person, however extraordinary might be the rightful duties he was engaged in, should be injured through contact with it?

The trial judge seems to have thought there was such a high degree of duty resting upon appellant, and at the instance of appellee he instructed the jury to that effect, as follows:

" 3. The court instructs the jury that the business of distributing electricity on wires strung over the streets of the city of Chicago is a dangerous business, and the persons or corporations engaged in the same are held to the utmost degree of care and diligence in the construction and mainte-nance of its line of wire so as to make the same safe against accidents, so far as such safety can, by the use of such care and diligence, be secured."

We will not by any present holding deny the high degree of care to be exercised by persons or corporations in the use

along the public highways of the powerful and secret agency of electricity, but under the circumstances of this case, where it was also shown that the defect in the insulation was not discernible from below, and could only be seen by a close inspection at the very point of imperfection, we can not assent to the proposition, as one of law, that the "utmost degree of care and diligence"—that is to say, such a degree of care as might be observed by the exercise of everything that human ingenuity could suggest—was required. And because such instruction, under the facts of this case, is unsupported by authority, and is contrary to what we conceive to be the law, and was probably prejudicial to the appellant, we are constrained to reverse the judgment and remand the cause for another trial.

MR. JUSTICE GARY.

I think the court should have given the instruction asked by the appellant to find for the defendant, for the reason that no duty was incumbent upon the appellant to furnish conveniences to string the telephone wires, and that therefore the judgment should be reversed without remanding.